May it please the court, counsel, Nell Brown, assistant federal public defender for the District of Oregon, on behalf of the defendant Tony Allen. I also represented Mr. Allen in the district court and I'm going to attempt to reserve two minutes for rebuttal. This case involves no factual disputes. At sentencing the district court, in the district court Mr. Allen faced a new sentence for a perjury charge as well as a violation of the terms of his supervised release in an older case. The parties entered into a written plea contract and under that contract sentencing was virtually open except with regard to the supervised release case. The parties agreed that the supervised release sentence would be the maximum that Mr. Allen could serve. That was 13 months and the parties also agreed that the government would make a recommendation at sentencing that the supervised release sentence be concurrent to the sentence in the new perjury case. In other words, the essence of the The problem is that they didn't exactly say that. They said the government will recommend that this 13-month sentence and so the question is what does will recommend mean, right? Does it mean is it good enough that it's in their sentencing memorandum or do they have to actually do it at the sentence? Yes, Your Honor. It's our position that an oral recommendation is required and that's under the Myers case and the Camarillo-Tejo case. But in this case, Mr. Allen prevails whether or not an oral recommendation is required in every case. This Court doesn't need to set that bright line rule here because in this case the prosecutor did file a sentencing memorandum that did include the recommendation that had been bargained for. But then he never made that recommendation orally even when the judge asked him specifically to state for the record the government's position on sentencing. Why didn't you object at that time? Frankly, I probably should have objected and the failure to object was probably ineffective on my part and my client may have a remedy under Section 2255. But I think that this Court should address this issue now in the interest of both judicial economy and because any objection would have been futile and because this appeal presents a question that is purely a question of law. Why would an objection be futile if you had the agreement in hand and said, Your Honor, they agreed to recommend to be consecutive, concurrent, not consecutive, and they're not making that recommendation now. Would you ask them why they're not doing that? Well, I think that the breach occurred here when the government was asked to put its position on the record and it completed that position by citing aggravating factors without also citing the concurrency recommendation. It was clear that the bargain here was really for a cap on what the government was arguing. We had asked that the government cap its argument at the high end of the perjury guideline by asking for a recommendation that the supervised release term be concurrent. That was a 46-month cap. You know, look, you might be right about what the government should have done, but futility is a bit over the top. It looks pretty clear here that the district judge wasn't thinking about it, the government didn't think about saying it, and you didn't think about saying it, even when the judge came out and said, I'm going to have it be consecutive. It looks like an oversight. It may still be a breach, but it sure looks like an oversight. And when one's got an oversight going on in the district court to say that it's futile because obviously the district court's going to be biased or the government's not going to make the recommendation, if you'd raise an objection, they could say, oh, sure, judge, we do recommend that. We just didn't say it. It's not like they get up in court and said, we recommend that you make it consecutive. That might be futile then, but — Well, I think that the arguments for the aggravating factors could equally be interpreted as an argument for an enhanced sentence at the high end of the guidelines or for a consecutive supervised release. So what's the remedy here? You go back and you're going to have a new sentencing hearing and the government's going to make the recommendation of promise to make? Is that where we are? That's what we're asking for, resentencing before a new judge so that the — Why a new judge? I believe that's what Santabello, the Supreme Court decision — Oh, there is, yes. There is all that old law about that. I'm sorry? No, there is all that old law about that. Okay. Well, that's what we're asking for, resentencing before a new judge. And the Santabello theory is essentially not that it's the judge's fault, but it's the prosecutor's mistake that can't be — the bell that can't be unrung. And, of course, the judge doesn't have to give a concurrence sentence. It's just a recommendation, right? That's correct. We could end up with the same sentence even on remand. The other reason that I think the Court should issue — address this issue today on the merits is the exception in Flores-Payon for waiver. Now, that case sets out three exceptions to waiver by failing to object to a breach of a plea agreement, and then it sets out as a final alternative a decision under the plain error standard. Here, I think we can review this case de novo because it presents purely a question of law, and the opposing party will suffer no prejudice if you reach this court — this issue today. Further, I think that — But why isn't it a plain error problem, since there was no objection? Well, I think that the reason is that the Court in Flores-Payon set out three exceptions to the waiver rule in the alternative to the plain error rule. Certainly — You know, that case came out in the old days before our en banc decision to clarify differences between forfeitures and waivers. And, personally, I think it's highly problematic that one would go back and say, it's really a waiver. We know now what a waiver means is you're really given it up, intentionally given it up. If it's really a forfeiture, then we do a plain error review. The case you're referring to comes before we really — It's true. It's in 1991. — before the Supreme Court, and we really clarify the difference between waiver, which means you're dead, and forfeiture, which means you get plain error review. It's problematic that one would — Okay. Well, even under the plain error rule, I think that this case should be decided in Mr. Allen's favor, and that's because the error here is plain. There's a breach under the decisions in Myers and Camarillo-Teo. Well, in Myers, looking at it briefly, it appears that the — there was no sentencing memorandum in which the recommendation was made. It was — it would have been apparent to the judge from the plea agreement, but not — but there wasn't an actual representation by the government. Here there was, but it was in writing, but not orally. Right. In Myers, there was no written sentencing recommendation and no oral recommendation. And what about in the other case? Sorry? You're also relying on another case? Camarillo-Teo, which I think is factually more similar to this case because there was a pre-sentencing written memorandum, and in that case, that was an illegal reentry case, and the plea contract there required the government to advocate for a four-level downward departure and to do so on three different rationales. Prior to sentencing, the government did submit a written memo there, as in this case, and they did recommend the four-level departure at least on one of those grounds. But when they got to court, the government didn't orally advocate for anything until the court had already suggested it would find a two-level departure rather than the four-level departure appropriate. And at that point, the government interjected that it agreed with the probation's recommendation for two levels. And the Ninth Circuit found a couple of different breaches there, and I think that's important. First, the Ninth Circuit found a breach because the written memorandum itself was insufficient. But the court went on to say, second, and more significantly, the government also breached the plea agreement when, at sentencing, it did not orally recommend the four-level departure. And that's at page 1027 of that decision. Then the court goes on to further say that the breach was aggravated in that case by the government's arguments or decision to support the two-level departure because that, as the court says, further undercut the original written recommendation for four levels. That wasn't a plain error case, though, was it? That was not a plain error case, Your Honor. That was a de novo review of the legal question. Well, the defense had objected at trial, is what I mean to say. That's correct. At sentencing, correct? That's correct. But I do think that that's instructive here because that case stands for the proposition that an oral recommendation is required. And I'd like to also point the court to the rationale in the Myers decision. Because although there was no written recommendation and no oral recommendation in Myers, and it's not factually identical to this case, what the court said there is instructive. The court said the public also has a right to know the concessions that the government is making in its plea agreement. Airing plea agreements in open court enhances public confidence in the administration of justice. And I believe that this case presents a plain error question if the court wants to reach it that way. Because plea bargaining is what happens in about 97 percent of the cases. It is critical that the government keep its obligations under the contracts it makes. Thank you. Stephen Piper for the United States. I was the prosecutor in the district court. I want to assure the court, as Judge Fernandez has already referenced, this was a completely inadvertent mistake on my part to forget to add one sentence at the end of my argument that we were, again, arguing that it should be concurrent. The problem is that whether or not there's any automatic rule here, I think the government the court said asked for the government's position on sentencing. Yes. It therefore was entitled to believe that what it was getting was the government's entire position on sentencing, and it didn't have this in it. I acknowledge that. And he also asked defense counsel for her position on sentencing, and she didn't make any reference to the contract. But she hadn't made any promises. Pardon me? But she hadn't made any promises. No, but it was a joint recommendation, Your Honor. I don't want to go back and forth on that issue. I want to point out to the court, number one, this is a plain error question. A case that I just discovered late yesterday, it was decided by this court yesterday, which I didn't have time to put in the 28J letter, is the Connell case. And counsel's aware of it. I discussed it with her. C-A-N-N-E-L. It was decided yesterday. Spell that again. C-A-N-N-E-L. It's 06-30590. And it does use the forfeiture language that Judge Fernandez referenced, and it does apply the plain error standard to situations where a claim is made that a plea agreement hasn't been honored, there must be an objection, otherwise it's a plain error question. And the court said there was no plain error in that case because there was no demonstrated prejudice caused by the government. In other words, they couldn't show the government did something so egregious that it caused a substantial denial of rights. Well, but here, it may well have been prejudicial. Pardon me? It may well have been prejudicial here in the sense that the government did something so egregious that it caused a substantial denial of rights. I'm sorry? It would be a speculative thing. They have to prove that it was actually – there's actually a connection between what I failed to do orally and what the court did after I'd already stated it twice in my sentencing memorandum. But the court otherwise followed the recommendations. So there's no reason to think he wouldn't have followed that recommendation either if it hadn't been forgotten about. Well, that's one inference that you could draw, but I don't think that's sufficient for plain error. It has to be much more worse than that. Well, why not just cure the error and send it back for resentencing? That would be the only remedy. Yeah. Right. I want to talk about a couple of other things. The government didn't do anything in this case to undercut its recommendation. The recommendation was clear in writing. It was stated twice. And I even gave a reason why the court should impose concurrent sentences because in recognizing the seriousness of what the defendant did, the court would, according to my recommendation, sentence at the top of the range, 46 months versus the 30 months with the reduction that the defense was asking for, and that that would reflect the seriousness of it, thereby justifying a concurrent sentence. That is going beyond really recommending it. That's actually giving a reason for it in the sentencing memorandum. And of course, when we're discussing the issues at sentencing, the controversy was over what that sentence should be, whether it should be 30 or 46 months, whether there should be the three level increase for substantial interference with the administration of justice, and whether it should be at the top of the range. That's what the controversy was about. Counsel says in her reply brief that she asked for an overall sentence of 30 months. I asked for an overall sentence of 46 months. There's nothing in the record to show that I ever asked for what eventually happened, and that is that there be a sentence of 59 months. But once the judge did that in open court, yes, the defense lawyer should have objected, but shouldn't you have objected, too, or at least realized at that point that you had forgotten the recommendation? I think you're probably right. It would have been good to do that. I don't think that that necessarily It isn't that it completely went by. I mean, by the end of the hearing, it should have been fairly evident that this hadn't happened. Right, but I think that would have been a good idea. I don't think that that alone would have caused the need for a reversal. Well, but it looks like what happened is the judge probably did not make a reasoned decision on that question, probably. Everybody overlooked it. Everybody forgot about it. Now, we can put it into one rubric or another, but it was an error, and it's pretty plain it was an error. And why not take the other two steps, instead of leaving somebody, something hanging out there that everybody knows is problematic? The judge did run a concurrent with the state sentence, which would suggest that the judge wasn't against running things concurrently. He didn't want to just whack this guy as good as he could whack him. So it kind of looks like we forget about the boxes and the pigeonholes, right? I follow your reasoning, but this is the case in which we've stated our recommendation twice in the sentencing recommendation, and the judge said he had read it. He had read it. I understand that, but then when he asked you, what is your position today as you stand here in front of me? And I left out the one sentence, I agree. Well, yeah. Sorry. No, it's not a question of bad-mouthing people. It's a question of saying, you know, we overlooked it, and everybody forgot about it. And I take it the defense forgot about it, too, for some reason, and whether that's ineffective assistance for another day. But everybody forgot about it. Can I address these cases before I sit down? Because the Camarillo case is readily distinguishable. There was a defective sentencing memorandum in that case, and there was a defective – in fact, there was a changed recommendation in court. That's why that case was reversed. The Myers case, there was no sentencing recommendation. It's just first time noted. Neither of them is directly on point. Pardon me? It's true that neither of them is directly on point. Right. I like the language that the Court used in the Quash case, where there was no violation of the plea agreement, even though there was some ambiguity on the part of what the prosecutor did. I think it's important to note that in the case that this Court held, we cannot conclude that the government was attempting to influence the district court to impose a greater sentence. There is absolutely nothing in this record that shows that I did anything to try to dissuade the court from not following the plea agreement. Save your silence. Save your silence. There was no – there was partial silence. There was certainly no silence when it came to what was pled. And a lot of times, judges certainly like the sentencing memorandum because it shortens the process, and I did the best I could in the sentencing memorandum to support the plea agreement. And the Johnson case, there the government used a victim impact statement that was completely unrelated to the case, and obviously the Court concluded that that was used improperly to countermand or undercut the sentencing recommendation. Nothing – nothing of that nature was done here.   GOTTLIEB Okay. Thank you very much, counsel. MS. GOTTLIEB Very briefly, as I have very little time left, Mr. Piper says that I didn't make the argument. I didn't overlook this issue of concurrent terms. On page 62 of the excerpt of record, I argued as far as the overall sentence, as I said in my letter, I'm asking for a sentence of 30 months, and I think there are a few different ways for the Court to get there. If Mr. Piper had asked for an overall sentence, as I did, we might not be here today. He's said over and over that he left out one sentence, minimizing what he left out. But that was the sole benefit of this bargain to Mr. Allen. Tony Allen gave up his right to a jury trial. He gave up his right to have the government prove the allegations of supervised release. He stipulated the maximum supervised release sentence. And the only thing he got in exchange was the government's agreement to recommend that that concurrent term, that supervised release term, sorry, should be concurrent. So that one sentence was the benefit of Mr. Allen's bargain in this case. And I'd briefly just like to address the Connell decision. I think Mr. Piper has mischaracterized that Court's holding yesterday. The Court found no breach at all in that case, because it did a factual analysis of what the government was required to do under the plea agreement and determined that there was no breach. The prejudice is the same. My understanding is all he was saying is which standard applied. It was a plain error standard that applied. It did apply a plain error standard, but it didn't find that there was no prejudice. Thank you very much. The case of United States v. Allen is submitted. We will go on to the last case of the day, United States v. Bacon. United States v. Johnson is submitted on the briefs.
judges: Fernandez, Berzon, Bea